**SHEDD–BARTUSH FOODS OF ILLI-
NOIS, Inc., Plaintiff-Appellant,**

v.

**COMMODITY CREDIT CORPORATION,
Defendant-Appellee.**

**No. 11576.**

United States Court of Appeals
Seventh Circuit.

April 6, 1956.

Earle E. Ewins, Chicago, Ill., Carroll
C. Grigsby, Smith & Huffaker, Detroit,
Mich., Musgrave, Ewins, Hanson & An-
derson, Chicago, Ill., for plaintiff and
appellant.

Robert Tieken, U. S. Atty., Anna R.
Lavin, Atty., Chicago, Ill., John Peter
Lulinski, Asst. U. S. Atty., Chicago, Ill.,
of counsel, for appellee.

Before DUFFY, Chief Judge, and
MAJOR and FINNEGAN, Circuit Judg-
es.

DUFFY, Chief Judge.

In this suit plaintiff seeks to recover
$65,231.00 from defendant claiming it
has suffered a loss in that amount be-
cause of defendant's alleged breach of
contract. Recovery is sought either as
the unpaid balance of the purchase price,
as damages for breach of contract or as
restitution for unjust enrichment.

Commodity Credit Corporation,
the defendant herein, a corporate agen-
cy of the U. S. Department of Agricul-
ture, issued Announcement FO–22 under
date of August 13, 1946 whereby it an-
nounced the contemplated purchase of
15,000,000 pounds of oleomargarine
made from coconut oil. On August 30,
1946 plaintiff submitted a bid on the us-
ual form to provide one million pounds
of oleomargarine at $.1653 per pound.
In a letter accompanying the bid, plain-
tiff stated: "Summing this up, we are
bidding $16.53 per cwt. on a million
pounds of coconut margarine for deliv-
ery in October and November and will

give you the best product possible. It is (*sic*) meets with your approval, we could consider another one-half million for delivery later on."

On September 10, 1946, and before its bid had been accepted, plaintiff sent the following telegram to the Department of Agriculture: "Reference our recent bid Announcement FO–22 this should read $16.53 as firm bid based on present oil market Stop Would appreciate advise as promptly as possible on this as necessary we make arrangements for tins and cases."

Defendant replied by telegram on the same date, as follows: "Subject terms and conditions FO–22 CCC accepts your offer dated August 30, 1946, as amended by telegram of September 10, for 1,000,-000 pounds of Coconut Oil Margarine at $0.1653 per pound fob Elgin, Illinois. * * * " Plaintiff wired the defendant on September 13, 1946: "Retel September 11th confirm contract. Aw–f(F) 42190 for 1,000,000 pounds margarine at $.1653 per pound fob Elgin, Illinois."

On September 25, 1946, plaintiff submitted the following telegraphic offer: "We are in position to make additional half million pounds coconut oil margarine late November delivery at same price as per contract, namely $16.53 cwt. FOB Elgin. Please consider this as firm offer and advise if acceptable." Defendant wired plaintiff on September 25, 1946 that its contract was amended to accept an additional 500,000 pounds of coconut oil margarine for November delivery.

On October 2, 1946 plaintiff telegraphed that it would make delivery of the additional 500,000 pounds during the week of November 25. However, plaintiff failed to make such delivery, and on November 11, 1946 wrote to defendant in part as follows: "We find ourselves in difficulties insofar as additional 500,-000 pounds of coconut oil margarine, scheduled for November delivery, is concerned. * * * Of course, when we entered this bid, we had no idea that OPA regulations would be lifted. * * The market today, on coconut oil, is .25.

In view of this, we would appreciate your indulgence in either cancelling this part of the contract, or holding it in abeyance until we are assured of a cost on the oil which will permit us to manufacture it at a profit." The letter concluded with the words: "Awaiting your suggestion on this we are * * *."

By telegrams dated January 9 and January 17, 1947, defendant requested delivery dates and shipping schedule. Plaintiff wrote letters dated January 20 and February 3, 1947, requesting further delay in fulfilling the contract until the market on coconut oil decreased so as to keep it from losing money. In the letter of January 20 plaintiff said: "Again we would appreciate your holding this in abeyance until the market would allow us to pack it, at least, without a loss."

Defendant replied on March 4, 1947 that the contracting officer was not authorized to make any adjustment in price nor to amend the existing contract so as to increase the cost to the Government. Plaintiff was given until March 7, 1947 to give its unqualified assurance in writing that deliveries would be made not later than April 30, or the contract would be considered "terminated with no right to delivery remaining in contractor." On March 10, 1947 plaintiff wired that it would proceed with the contract. The terms of the telegram were confirmed by letter dated March 11, 1947. Such confirmation was without any reference to an adjustment in price. Plaintiff then proceeded to make delivery. Thereafter plaintiff appealed to the Contracts Dispute Board, and on April 19, 1948 that Board denied the appeal. This suit was then commenced.

The bid and acceptance for the first 1,000,000 pounds of oleomargarine are not here in issue. The dispute before us pertains only to the one-half million pounds mentioned in plaintiff's telegraphic bid under date of September 25, 1946.

OPA's price ceilings on coconut oil were removed on October 30, 1946. On September 25 when plaintiff submitted

its bid on 500,000 pounds, the price of coconut oil was $.1409 per pound. On December 4, 1946 the price for such oil was 24 cents per pound.

Plaintiff relies upon the August 13, 1946 announcement by the United States Department of Agriculture, Production and Marketing Division, which stated in the first paragraph thereof: "In order to meet definite supply needs, the U. S. Department of Agriculture hereby announces contemplated purchases by the Commodity Credit Corporation (hereinafter referred to as CCC) of 15,-000,000 pounds of Oleomargarine, colored (Special) made from coconut oil for export. CCC will arrange to provide a source of supply of crude coconut oil at ceiling price in the event that the successful bidder (or bidders) are not in a position to procure crude coconut oil through usual channels. * * * Offers must be submitted on prescribed Form FOO–22 in an original and three signed copies * * *. Inasmuch as additional purchases may be made by CCC subject to the same terms and conditions contained herein, it is suggested that you retain this announcement in your files for future reference."

In about the center of the announcement there appeared a sub-heading: "*Terms and Conditions.*" Beneath the sub-heading appeared the following: "In submitting an offer to sell, the terms and conditions of this announcement and those set forth in 'Standard Contract Conditions' * * * shall become a part of the offer to sell and upon acceptance by CCC, the offer and acceptance will constitute a valid and binding Contract."

The trial court filed a detailed Memorandum of Decision, which stated that the findings of fact and conclusions of law therein were to be considered the findings and conclusions required by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. The Court decided the issues in favor of the defendant. The Court held that plaintiff's telegram of September 13, replying specifically to defendant's telegram of September 10, constituted the acceptance which completed the contract, and that the price agreed upon was an unconditional $.1653 per pound. The Court said there was no basis for construing the contract for the sale and purchase of the additional 500,-000 pounds of oleomargarine as fixing a price adjustable to save plaintiff harmless from increase in the cost of coconut oil.

The critical provisions of the agreement as to the 1,000,000 pounds of margarine are as follows: plaintiff's original bid was dated August 30, 1946 and referred to the one million pounds of margarine. The bid price was a definite $.1653 per pound. Plaintiff's telegram of September 10 stated the bid should read " * * * $16.53 as firm bid based on present oil market." Defendant's telegram of the same date read: "Subject terms and conditions FO–22 CCC accepts your offer dated August 30, 1946, as amended by telegram of September 10, for 1,000,000 pounds of Coconut Oil Margarine at $0.1653 per pound fob Elgin, Illinois. * * * " Plaintiff, on September 13, telegraphed defendant: "Retel September 11th confirm contract Awf (F) 42190 for one million pounds margarine at $.1653 per pound fob Elgin, Illinois."

We need not consider what the rights of the parties would have been had there been a change in the market price of coconut oil prior to the completion of the contract for the million pounds of margarine. We merely note in passing that plaintiff's telegram of September 13 contained no qualifications as to the bid price of $.1653 per pound, and that the words in plaintiff's telegram of September 10: " * * * $16.53 as firm bid based on present oil market * * * " were at least uncertain in meaning.

When plaintiff bid to supply a half million pounds of margarine under date of September 25, 1946, there was no reference to "present oil market." The offer was "We are in position to make additional half million pounds coconut oil margarine late November delivery at same price as per contract, namely $16.-

53 cwt. FOB Elgin Stop Please consider this as firm offer and advise if acceptable." It will be noted that the only reference to the prior contract was that the price bid is the same as in the former contract. Certainly up to this point there was no suggestion by plaintiff that its bid included some kind of escalator clause or other provision by which its bid for manufacturing margarine would vary depending upon the market price of coconut oil. True, defendant wired on September 25, 1946 that plaintiff's contract was amended to accept an additional 500,000 pounds of margarine for November delivery. But there is no indication defendant understood or agreed by that telegram that the definite fixed price of $16.53 per cwt. would be varied by some formula based upon changing market prices for coconut oil.

, Plaintiff's conduct demonstrates it understood the price of margarine fixed by the contract was definite. If plaintiff had the contract right to raise or lower the price by some formula unexpressed and undefined, it would not have been seeking defendant's " * * * indulgence in either cancelling this part of the contract, or holding it in abeyance until we are assured of a cost on the oil which will permit us to manufacture it at a profit." (Letter of November 11, 1946), nor requesting "Again we would appreciate your holding this in abeyance until the market would allow us to pack it, at least, without loss." (Letter of January 20, 1947.)

It is doubtful that the statement in the solicitation of bids that under certain conditions CCC would arrange a source of coconut oil at ceiling price was a part of the terms of the contract. In that announcement there was clearly stated in a sub-head "Terms and Conditions." Thereunder, it was stated that the terms and conditions set forth in "Standard Contract Conditions" were applicable. Article 12 provided "No changes in the terms and conditions of the Contract shall be allowed unless the same have been ordered in writing by the Agency (CCC) and a change in price, if any, has been stated in such order." However, conceding *arguendo* that defendant was required, under the contract, to furnish coconut oil to plaintiff at ceiling price, plaintiff never made a request that defendant should do so. Furthermore, during the month of November, during the latter part of which month plaintiff was to make delivery, there were no ceiling prices on coconut oil.

Plaintiff has not met the burden of establishing a breach of contract by the defendant. The results reached by the trial court were correct. Judgment

Affirmed.