## THERESE M. THILL v. MODERN ERECTING COMPANY AND ANOTHER.

193 N. W. 2d 298.

December 23, 1971—No. 42665.

*Lindquist & Vennum, Edward M. Glennon,* and *David E. Krause,* for appellant.

*DeParcq, Anderson, Perl & Hunegs* and *William H. DeParcq,* for respondent.

ROGOSHESKE, JUSTICE.

Thill v. Modern Erecting Co. 284 Minn. 508, 170 N. W. 2d 865 (1969) authorized plaintiff, Mrs. Therese M. Thill, to proceed to trial on her separate action for loss of consortium. The subsequent trial resulted in a jury award of $100,000.[1] In response to defendants' post-trial motions, the trial court refused to reduce the verdict or to order a new trial. Defendant Modern Erecting Company appeals from the post-trial order and the judgment, asking this court to reduce the award to an amount not to exceed $25,000 and to order a new trial if plaintiff refuses to consent to the reduction. We decline and affirm the judgment.

In June 1960, plaintiff's husband, Edward, was rendered a permanent paraplegic from the waist down when injured while employed in building construction work. He sued for damages,

---

[1] " 'Consortium,' as a general description, represents reciprocal rights inherent in the marital relationship of husband and wife, including such undefined elements as comfort, companionship, and commitment to the needs of each other. Its 'predominant element' * * * is 'the loss of sexual relationship,' presumably including frustration of man's primal drive of reproduction." Thill v. Modern Erecting Co. 284 Minn. 508, 510, 170 N. W. 2d 865, 867 (1969).

alleging negligence against defendants and others. In Thill v. Modern Erecting Co. 272 Minn. 217, 136 N. W. 2d 677 (1965), we affirmed defendants' liability as joint tortfeasors to Edward and upheld the trial court's reduction of damages awarded to him by the jury from $642,400 to $375,000. Subsequently, Mrs. Thill instituted this separate derivative action against defendants. Upon appeal from a summary dismissal of her action, we overruled, to the extent it was inconsistent, Eschenbach v. Benjamin, 195 Minn. 378, 263 N. W. 154 (1935), which denied a wife's independent right of action for loss of consortium, and we established prospectively the rule that "the wife of a husband injured as the direct result of the negligence of another shall have a right of action against that same [tortfeasor] for her loss of consortium" if her cause of action is joined for trial with the husband's. Thill v. Modern Erecting Co. 284 Minn. 508, 513, 170 N. W. 2d 865, 869 (1969).

In recognition of plaintiff's contribution to effect a change in the rule, she was authorized to proceed to trial upon her separate action despite the limitations of prospective application and the requirement of joinder.[2] Because Edward's prior award was understandably not itemized by special verdict, we acknowledged the difficulty which would confront the trial court in protecting defendants against a jury award to plaintiff of damages which were included in her husband's award. We were particularly aware of the hazard of double damages with respect to Edward's prior claims and admitted recovery of damages for nursing services furnished by plaintiff and his loss of earning capacity, i. e., for his future inability to support plaintiff and his family. We therefore cautioned:

"* * * [I]t is incumbent upon the trial court to afford defendants the substitute safeguard of evidentiary rulings and instructions to the jury." 284 Minn. 514, 170 N. W. 2d 870.

---

[2] Limitation upon prospective application is dictated by the decisions in Spanel v. Mounds View School Dist. No. 621, 264 Minn. 279, 118 N. W. 2d 795 (1962), and Balts v. Balts, 273 Minn. 419, 142 N. W. 2d 66 (1966).

We specifically directed that the trial court determine and disclose to the jury the claims made by Edward in the trial of his action and to instruct the jury that the award to plaintiff must be limited to only such damages as the evidence she presents "will sustain over and above that necessarily considered by the jury in her husband's prior action for his own loss." 284 Minn. 515, 170 N. W. 2d 870.

The essential issue raised by appellant is whether the award to plaintiff is excessive. A resolution depends upon whether the trial judge followed this court's instructions to adequately protect the defendants from compensating plaintiff for damages otherwise satisfied in her husband's original action, and whether the award to plaintiff is unsupported by the evidence and so unreasonable as to require a reduction in the verdict or a new trial.

The record demonstrates to our complete satisfaction that the trial judge in his rulings on evidence and in the jury instructions fully conformed to our cautionary instructions and employed every feasible safeguard to protect against an award of double damages. Indeed, it is clear that throughout the trial, not only the judge but counsel were fully aware of the potential of overlapping damages and repeatedly admonished the jury to avoid, to the best of their ability, duplication of damages for nursing services and to segregate from their award damages previously awarded to Edward. We thus entertain no reasonable doubt that the jury was sufficiently cognizant of the difficult task confronting them.

We have carefully reviewed the record and have considered all of appellant's arguments in support of its claim that the award is excessive, including the contention that because the communal and conjugal relationships of married partners is bilateral and incapable of separation, a double award was inevitable. We nevertheless are not persuaded to interfere, for appellant cannot demonstrate, without indulging in speculation, that a double award was made, and it does not conclusively ap-

pear that there is insufficient evidence to support the award. In an appeal involving the sufficiency of the evidence, we must take the view of the evidence most favorable to the party receiving the verdict and sustain the award if it is possible on any reasonable theory of the evidence. Roeder v. North American Life Ins. Co. 259 Minn. 168, 106 N. W. 2d 624 (1960).

Although we must agree that the award is amazingly liberal, we are not prepared to hold that it is so lacking in evidentiary support as to justify what would on this record necessarily amount to an arbitrary reduction. Our refusal to interfere, however, should not be given precedential value in view of the unique procedural posture of this case. Realizing that consortium may be "one of the most fundamental of human rights," [3] the comments of the trial judge in denying the motions for a remittitur or a new trial are particularly relevant and persuasive on the issue of sufficiency of the evidence and reasonableness of the jury's verdict:

"It is, of course, difficult for a human being to evaluate the loss of consortium by another. Likewise, the uniqueness of each human being limits the value of precedent, which is sparse in any event. It is apparent that the importance of the intimate aspects of married life to the plaintiff as an individual must be considered in the disposition of the motion.

"The evidence before the jury showed her to be a woman who had considered life without such factors, one of dedication to others as a nun, and decided that such a life was not appropriate for her. Mrs. Thill entered the convent at age fifteen, staying for about two years. Somewhat later she entered again and stayed about a year. Coming from a large family, she had twelve brothers and sisters. She married at twenty-three, giving birth to five children by her thirtieth year. She was only thirty-one

[3] Clark, *The Wife's Action for Negligent Impairment of Consortium,* A.B.A. Section of Family Law, Family Law Q. Vol. III (1969) pp. 197, 204.

years of age when her husband was rendered unable to give her further children or sexual comfort. Her entire style of life is changed and she has apparently had to assume the dominant role in the marriage. The distinct impression was made on the Court that this was not a comfortable role for her.

"Mr. Thill's courage and spirit were evident and admirable. However, it is clear that she assumes a protective and comforting attitude toward him, almost more maternal than wifely. She appears to be a woman in whom the current of earthly and personal life ran too strong to permit her to lead a cloistered life of spirituality. It is this very aspect of life of which she has been deprived.

"Loss of consortium seems to be an area of damage in which the Court is not possessed of any expertness such as to outweigh the judgment of the jury. Perhaps quite the contrary would be the case.

"The jury here was composed of seven men and five women. One of the women was a widow; one woman was unmarried and of mature years; one of the married women was in her twenties and the other two of middle age. All of the men were married and all had children. Three of the men were somewhat past middle age, one of them a retired school principal; the other men were middle aged, other than one who was apparently in his early thirties. While not a perfect cross section, its composition is certainly not drastically unrepresentative of the community. It would seem that this jury would bring a depth and balance to a practical question of life greater than that reasonably to be expected of an individual judge."

Affirmed.