## NESTOR D. DAWYDOWYCZ AND ANOTHER v. JAMES C. QUADY AND ANOTHER. WILLIAM R. McCARTHY, THIRD-PARTY DEFENDANT.

220 N. W. 2d 478.

July 26, 1974—No. 44132.

*Hoppe & Healy* and *Robert L. Hoppe,* for appellants.

*Axelrod, Cincera, Donohue & Markley, Edward T. Donohue, Nord, Webster & Brennan,* and *David W. Nord,* for respondents Dawydowycz.

*Rider, Bennett, Egan, Johnson & Arundel, William T. Egan,* and *David J. Byron,* for respondent McCarthy.

Heard before Knutson, C. J., and Otis, MacLaughlin, and Mulally, JJ., and considered and decided by the court en banc.

OTIS, JUSTICE.

This is an action to recover damages for personal injuries sustained by plaintiff Nestor Dawydowycz and for loss of consortium suffered by plaintiff Helen Dawydowycz as a result of a collision between their automobile and one driven by Kathryn Quady and owned by James Quady. The jury found Kathryn Quady 75-percent negligent and third-party defendant, William R. McCarthy, 25-percent negligent. Plaintiffs were awarded a total of $58,000 in damages against the Quadys, who seek contribution from McCarthy.

The Quadys appeal from an order granting McCarthy judgment notwithstanding the verdict and denying the Quadys a new trial on the issue of damages, and from the judgment entered pursuant thereto.

The facts are essentially undisputed. Nestor Dawydowycz was driving west on Highway No. 12 in Orono on the morning of February 28, 1970. The highway was 20 feet wide, the pavement dry, and visibility good. He was traveling about 50 miles per hour in a 65-mile zone.

Kathryn Quady, the 16-year-old daughter of James Quady, was driving the Quady automobile in an easterly direction on Highway No. 12 at a speed of 45 to 50 miles per hour. The accident occurred when she passed the crest of a hill and saw a pickup truck in front of her being driven in an easterly direction by

McCarthy at a slow rate of speed. In attempting to avoid the McCarthy truck, she applied her brakes, skidded 157 feet, and veered into the westbound lane of traffic, striking the Dawydowycz automobile.

A few minutes earlier, McCarthy had driven past the place where the accident subsequently occurred and had seen a car in the ditch on the north side of the highway. He had gone to a dump and had reentered the highway from a private roadway 600 feet west of the hill crest. Before heading east McCarthy saw no traffic. There is conflicting testimony as to the speed which his truck had attained by the time it reached the hill crest. However, it is conceded that it was less than 35 miles per hour in the 65-mile zone. As McCarthy passed over the hill crest, he noticed a tow truck with a flashing red light on the north side of the highway next to the car he had previously seen in the ditch. The tow truck was approximately 600 feet east of the hill crest. McCarthy was first aware that the Quady automobile was behind him when he heard the sound of brakes. He thereupon accelerated his truck to 50 or 60 miles per hour. The collision between plaintiffs and Quady followed, at a point some 50 feet from the tow truck.

Nestor Dawydowycz sued the Quadys to recover damages for his injuries, and Helen Dawydowycz, his wife, sought damages for loss of consortium. The Quadys seek contribution from McCarthy. Although plaintiffs have not sued McCarthy, the jury found that both Kathryn Quady and McCarthy were negligent and that the negligence of each was a direct cause of Nestor's injuries. It assessed 75 percent against the Quadys and 25 percent against McCarthy. It awarded Nestor Dawydowycz $50,000 and Helen Dawydowycz $8,000 against the Quadys. Upon motion of McCarthy, the trial court granted him judgment notwithstanding the verdict.

1. *The contribution issue.*

The court read to the jury the so-called slow-speed statute, Minn. St. 169.15, as follows:

"No person shall drive a motor vehicle at such a slow speed as to impede or block the normal and reasonable movement of traffic except when reduced speed is necessary for safe operation or in compliance with law * * *."

The court also charged on Minn. St. 169.64, subd. 3, which provides in relevant part:

"Flashing lights are prohibited, except on an authorized emergency vehicle, school bus, road maintenance equipment, farm tractors, self propelled farm equipment or on any vehicle as a means of indicating a right or left turn, or the presence of a vehicular traffic hazard requiring unusual care in approaching, overtaking or passing."

The Quadys contend that it was error to grant judgment n. o. v. since the jury reasonably found that McCarthy violated the slow-speed statute. They argue that the statute was applicable in spite of the fact that a tow truck with a flashing red light was present near the scene of the accident. We do not agree. Under Minn. St. 169.64, subd. 3, a flashing light indicates "the presence of a vehicular traffic hazard requiring unusual care in approaching, overtaking or passing." Compliance with the statute ordinarily requires that speed be reduced. The slow-speed statute directs that speed be reduced when "necessary for safe operation or in compliance with law." Minn. St. 169.15.

As applied to Minn. St. 169.64, subd. 3, this is a case of first impression. However, we have previously recognized the limited applicability of the slow-speed statute. In Aanenson v. Engelson, 267 Minn. 1, 6, 124 N. W. 2d 360, 364 (1963), we noted:

"* * * This statute [Minn. St. 169.15] has caused difficulties in the past, perhaps because its broad language invites application while its significance as a cause of motor vehicle collisions usually requires a restricted application. The language indicates that the statute was intended to apply whenever a driver proceeds at a speed slower than permitted or reasonable under the circumstances, and which not only is unnecessary for the safe

operation of his vehicle but also results in impeding the normal and reasonable movement of other vehicles traveling upon the highway. If sufficient evidence is introduced to sustain a finding that the prohibited type of slow speed existed and that it played a substantial part in bringing about the collision, the statute is relevant and a party is entitled to have its provisions included in the charge."

One of the exceptions to the "slow speed" rule is when "reduced speed is necessary for safe operation." Here the presence of an emergency vehicle was a "traffic hazard requiring unusual care in approaching." Accordingly, it was not error for the trial court to hold that the jury was not justified in finding that McCarthy had violated Minn. St. 169.15.

■ *The damages issue.*

The injuries of Nestor Dawydowycz included facial lacerations, injury to the upper and lower jaws, and a dislocation of a neck vertebra. He underwent surgery and was unable to return to work for 8 months following the accident.

The Quadys claim that the damages awarded were excessive. This is an issue which in the first instance is for determination by the trial court. An appellate court will not interfere unless the failure to do so would be "shocking" and result in a "plain injustice." DelMedico v. Coats, 295 Minn. 226, 231, 203 N. W. 2d 860, 864 (1973).

The question is whether the evidence supports the verdict. Fifer v. Nelson, 295 Minn. 313, 318, 204 N. W. 2d 422, 425 (1973). In deciding the issue the following factors are relevant: past and future pain, permanent disability, life expectancy, ability of plaintiff to follow his usual occupation, loss of earning power, the effect on plaintiff's enjoyment of the amenities of life, degree of disfigurement, and the inflationary trend of the economy. Moteberg v. Johnson, 297 Minn. 28, 35, 210 N. W. 2d 27, 32 (1973); Stenzel v. Bach, 295 Minn. 257, 261, 203 N. W. 2d 819, 822 (1973).

Although Nestor Dawydowycz had a satisfactory recovery, his doctor was of the opinion he sustained a 20-percent permanent impairment of the spine. He has persistent neck pain and pain down the right arm, for which he takes drugs three times a day, as well as numbness of the fingers in his right hand. In addition, he experiences numbness in his hip where bone was taken for a graft in his neck. Because of a tracheotomy, he is no longer able to sing, which he previously enjoyed. His lower lip is somewhat paralyzed and he has trouble eating which inhibits his social activities.

The out-of-pocket expenses of Nestor Dawydowycz amount to $17,782.40, half of which represents lost wages. Following the accident, he was able to resume his work as a meat inspector.[1] He enjoyed excellent health prior to the accident. Under the circumstances, we hold that an award of $50,000 is not excessive.

As to the damages awarded Mrs. Dawydowycz, we also affirm. A wife's right of action for loss of consortium was first recognized by this court in 1969. Thill v. Modern Erecting Co. 284 Minn. 508, 170 N. W. 2d 865 (1969). Subsequently we indicated that consortium may be "one of the most fundamental of human rights."[2] Thill v. Modern Erecting Co. 292 Minn. 80, 84, 193 N. W. 2d 298, 300 (1971). Mrs. Dawydowycz testified that her husband's disposition has changed since the accident; that he is argumentative and irritable; and that they now rarely attend social events. She finds her marriage progressively more difficult to endure. In addition to damages for loss of consortium, Mrs. Dawydowycz was entitled to compensation for services she performed for her husband while he was ill, including bathing and feeding him, and teaching him to walk again. These considerations justify the award of $8,000.

Affirmed.

---

[1] At the time of trial, plaintiff was earning $15,973 a year, which is $2,173 a year more than he was earning prior to the accident.

[2] See, Annotation, 36 A. L. R. 3d 900.

MR. CHIEF JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.