**Ruth HOPPE, Plaintiff,**

v.

**G.D. SEARLE & CO., Defendant.**

**No. 88 Civ. 2558 (JFK).**

United States District Court,
S.D. New York.

Nov. 19, 1991.

See also 779 F.Supp. 1425.

---

William Dinkes, Dinkes & Morelli, New York City, for plaintiff.

Harvey L. Kaplan, Shook, Hardy & Bacon, Kansas City, Mo., for defendant.

## OPINION AND ORDER

KEENAN, District Judge.

### I. PLAINTIFF'S REQUEST FOR A LIMITING INSTRUCTION ON FDA APPROVAL OF THE CU–7

The Court will give a limiting instruction on the effect of FDA approval, and will take judicial notice of the Food Drug and Cosmetic Act in the charge to the jury.

### II. PLAINTIFF'S REQUEST FOR AN ORDER PERMITTING THE USE OF PRIOR DIRECT TESTIMONY OF DR. FIVES–TAYLOR AND DR. ROBERTSON

Plaintiff seeks an order permitting the introduction at trial of the former testimony of two doctors, Dr. Paula Fives–Taylor and Dr. Channing Robertson, given during the trial of *Kociemba v. G.D. Searle & Co.* (Civ. No. 3–85–1599), another products liability suit involving the Cu–7. Federal Rule of Evidence 804, which provides exceptions to the rule against hearsay, governs this request. Rule 804(b)(1) permits the introduction of former testimony where the declarant is unavailable and the testimony was given "as a witness at another hearing of the same or a different proceeding ... if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." Rule 804(a) defines "unavailability" as including situations where the declarant is "absent from the hearing and the proponent of a statement has been unable to

procure the declarant's attendance ... by process or other reasonable means."

■ Plaintiff asserts that efforts were made to arrange for the trial testimony of Drs. Fives–Taylor and Robertson, but that both doctors declined to testify. Plaintiff does not explain why the doctors declined. Further, plaintiff failed to forward to the Court explanatory affidavits from the doctors that plaintiff cited in her motion papers and pledged to furnish. More troublesome, plaintiff's representation that the doctors are unavailable is hardly current. In fact, there is no indication that plaintiff ever renewed her request that they testify in the year since they declined, nor is there anything to suggest that they remain unavailable.

■ Even were the doctors still unavailable, their former testimony must still satisfy the requirements of Rule 804(b)(1). Specifically, the party against whom the testimony is offered must have had an opportunity and similar motive to cross-examine the witnesses. This does not appear to be the case, however. The facts of the case at bar differ from those in *Kociemba* in two significant respects.

First, Mrs. Hoppe and the plaintiff in *Kociemba* were exposed to the Cu–7 for different periods of time: Mrs. Hoppe for eleven months, Mrs. Kociemba for eighteen. This distinction bears on the issue of product deterioration and its potential effect on the plaintiffs. In *Kociemba,* Dr. Fives–Taylor's testimony was limited to those Cu–7 IUDs that had been used for the period of time Mrs. Kociemba had used her Cu–7. As defendant observes, the rationale for this limitation of testimony was that "product 'deterioration' which might have occurred during a period *after* the plaintiff stopped using the product was not relevant." Opp.Mem. at 10. This rationale is persuasive, and leads to the conclusion that neither Dr. Fives–Taylor's *Kociemba* testimony about 18–month old Cu–7s, nor Dr. Robertson's microscopic photographs of Cu–7s older than eleven months, is relevant in this case.

A second distinction between this case and *Kociemba* is that this case suggests rather unusual facts that may well be advanced to explain Mrs. Hoppe's infertility and pelvic inflammatory disease. There is no indication that in *Kociemba* Searle would have had reason to cross-examine Dr. Fives–Taylor or Dr. Robertson about the bearing of these unusual facts on the issue of causation.

Other issues similarly suggest that Searle may not have had a similar motive and opportunity to cross-examine the witnesses in *Kociemba.* First, Searle asserts that it has obtained impeachment evidence since the doctors testified in *Kociemba* in 1988. *See* Opp.Mem. at 8–9. Among other things, Dr. Fives–Taylor was found to have misrepresented material during her testimony, resulting in the *Kociemba* Court's subsequently striking all of her testimony on the significance of copper's presence in the Cu–7. *See Kociemba v. G.D. Searle & Co.,* 707 F.Supp. 1517, 1529 (D.Minn.1989); Trial Transcript (Civ. 3–85–1599) Aug. 22, 1988; Opp.Mem. at 8–9. Second, Searle asserts that current scientific and medical literature provides material that Searle would have used to challenge these experts' credibility, but could not because the information was not yet available.

■ That Searle therefore did not have a similar motive to cross-examine these experts in *Kociemba* is not in itself dispositive on the issue of admitting their former testimony. The fact that they have not had an opportunity to depose them in the context of this case, however, militates in favor of excluding the testimony. In *Rutledge v. Electric Hose & Rubber Co.,* 327 F.Supp. 1267 (C.D.Cal.1971), *aff'd,* 511 F.2d 668 (9th Cir.1975), the plaintiff sought to admit the former testimony of witnesses that he had not deposed, despite their apparent availability for out-of-state depositions. The Court denied plaintiff's request on the ground that the witness was not unavailable. *See id.* at 1271. In a recent Cu–7 case, the court took a similar approach, refusing to allow plaintiff to read the prior testimony of Dr. Fives–Taylor or of Dr. Robertson without having first produced them for deposition during discovery. *See Hallich v. G.D. Searle & Co.,*

C6–89–0500 (7th Dist. Minn.) (bench opinion). As defendant convincingly argues, that ruling "implicitly recognized Searle's lack of prior motive and opportunity to cross-examine these witnesses on issues peculiar to the case in which their testimony was being offered." Opp. Mem. at 9.

Drs. Fives–Taylor and Robertson were never produced for depositions in this case. In fact, when defendant noticed their depositions on November 2, 1990, plaintiff appealed to the magistrate judge overseeing discovery for a protective order preventing the depositions. See Plaintiff's Letter to Magistrate Buchwald, Nov. 13, 1990. In the tangle of discovery and other pre-trial disputes, the application was apparently never resolved, nor were the depositions ever taken.

For the foregoing reasons, this Court finds that the requirements of FRE 804(b)(1) have not been satisfied in this case. The former testimony of Dr. Fives–Taylor and Dr. Robertson is therefore inadmissible under the former testimony exception to the hearsay rule.

### III. PLAINTIFF'S REQUEST TO EXCLUDE EVIDENCE OF THE MEDICAL AND SEXUAL HISTORIES OF PLAINTIFF AND HER HUSBAND

Plaintiff seeks an order excluding evidence of plaintiff's sexual history as well as of her husband's sexual history and medical records. Plaintiff asserts that the evidence is irrelevant and unduly prejudicial and therefore inadmissible.

 Under FRE 402, "all relevant evidence is admissible"; conversely, evidence that is not relevant is not admissible. See Fed.R.Evid. 402. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Plaintiff cannot earnestly profess that evidence of her own or her husband's sexual history is irrelevant to the issues in this case.

Plaintiff commenced this action seeking damages for her infertility, which she claims resulted from pelvic inflammatory disease ("PID") caused by the Cu–7. Thus, plaintiff must establish at trial that the Cu–7 caused her infertility, and that other potential causes did not. Current medical knowledge teaches that PID is caused by several bacteria, chiefly gonorrhea, chlamydia and genital mycoplasmas. These bacteria are often transmitted during sexual activity. Occasionally they are transmitted during procedures involving the insertion of an instrument through the vagina and into the uterus; abortions, for example, pose this sort of an "instrumentation risk." Plaintiff's sexual history is therefore of the utmost relevance: that she has had multiple sexual partners bears on the issue of causation, as does her 1974 abortion. See Nickerson v. G.D. Searle & Co., 900 F.2d 412, 420 (1st Cir.1990) (plaintiff in suit alleging that IUD caused her infertility had burden of proving that it "caused or contributed to cause her PID. Defendants had the right to show that the PID could have been caused by something other than the IUDs.")

For the same reasons, Mr. Hoppe's sexual history is relevant. Plaintiff's exposure to her husband's sexually transmitted diseases tends to show that her infertility might have resulted from something other than defendant's product. Plaintiff's argument that her medical records disclose no sexually transmitted disease and that her husband's medical condition is therefore irrelevant to her condition is unpersuasive for two reasons. First, as Magistrate Judge Buchwald observed in a November 26, 1990 Memorandum and Order in this case,

at the close of [this case], no one will be able to say with certainty how plaintiff contracted the PID. The issue to be resolved in this case is whether it is more likely than not that plaintiff obtained or contracted PID because she used defendant's product or for some other reason. Plaintiff cannot ignore the statistical fact that more than a half of PID cases are caused by sexual transmission. Further, plaintiff may not establish causation or inhibit defendant's efforts by excluding evidence of mathematically more likely

sources of the complained disease. Thus, the greater plaintiff's exposure to disease conditions of partners, the more the mathematical odds increase that she contracted the disease for a reason other than the use of defendant's product. Memorandum and Order, 88 Civ. 2558 (JFK), Nov. 26, 1990, at 4, 1990 WL 198825 (Magistrate Judge Buchwald) (granting discovery of plaintiff's sexual history and of Mr. Hoppe's medical and sexual history).

Second, plaintiff's medical record apparently does indicate treatment for two sexually transmitted disease, mycoplasma and trichomonas. More important is the absence of medical documentation of plaintiff's condition, however. Plaintiff has produced no records for a nine-year period during which she had eight sexual partners, and has produced only record of medical care between the time her Cu–7 was removed in March 1979 until she was diagnosed as having tubal damage in May 1984. *See* Memorandum and Order, 88 Civ. 2558, Nov. 26, 1990, at 3 (Magistrate Judge Buchwald). Thus, plaintiff's argument that her medical record is "clean" and her husband's medical condition is therefore irrelevant is somewhat misleading in light of the fact that there is scant documentation of regular gynecological examinations and because PID is often asymptomatic in any event.

■ Plaintiff's argument that the evidence is unduly prejudicial is rejected. Plaintiff has put the cause of her infertility at issue, and therefore cannot deny the defendant access to alternative causation evidence. *See Smith v. Parmley*, 558 F.Supp. 161 (E.D.Tenn.1982). The evidence of plaintiff's and Mr. Hoppe's prior sexual histories is directly relevant to the issues at bar and, while prejudicial, is not unduly prejudicial such that it substantially outweighs its probativity. *See, e.g., Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1339–40 (9th Cir.1985) (upholding district court's admission of sexual history evidence of plaintiff and her husband in Dalkon Shield case, despite prejudicial nature of evidence).

■ Plaintiff's final argument is that admitting the evidence would violate her own and her husband's constitutional rights to privacy. Plaintiff chose to place her medical condition at issue by filing this lawsuit; it would be inequitable to permit plaintiff to select what evidence she wishes to be admitted, and deny defendant the right to present alternative theories of causation. Further, Mr. Hoppe is not a wholly disinterested third party to this action, as Magistrate Judge Buchwald observed in her order permitting discovery of his sexual history. *See* Memorandum and Order, 88 Civ. 2558, Nov. 26, 1990, at 5 (Magistrate Judge Buchwald). Thus, the cases plaintiff cites in support of her motion to exclude evidence of Mr. Hoppe's sexual history are inapposite. Mr. Hoppe has had a presumably exclusive sexual relationship with plaintiff since 1981, and has been married to her since July 1982. Mr. Hoppe cannot be ruled out as a possible source of plaintiff's medical problems.

For these reasons, plaintiff's request to exclude evidence of her own and her husband's sexual histories is denied. The evidence is admissible.

## IV. PLAINTIFF'S REQUEST TO PRECLUDE DEFENDANT'S USE OF DEPOSITIONS OF PERSONS UNDER ITS CONTROL

■ Plaintiff requests that the defendant be precluded from using deposition testimony of "any deponent who is under Searle's control" during plaintiff's case-in-chief. Pl. Mem. at 2. Plaintiff argues that a party should not be able to offer the deposition of someone within its control "absent exceptional circumstances demonstrating that the party cannot obtain the witness' presence." *Id.* at 3. Alternatively, plaintiff requests that Searle be permitted to introduce deposition testimony of Searle witnesses only during defendant's case-in-chief.

In its response, defendant explains that it is unsure how broadly plaintiff intends its request to be read, but states that it does not intend to offer the deposition testimony of any Searle employee from another case.

Federal Rule of Civil Procedure 32(a)(3) governs the use of depositions at trial. Subsection (B) is the only potentially applicable section in this situation. It provides that a party may use a deposition if

> the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition.

This provision has been interpreted to apply to an individual party's introduction of his own deposition at trial, *see Richmond v. Brooks*, 227 F.2d 490 (2d Cir.1955), and more specifically to a corporate defendant's introduction of depositions of its officers or employees. *See Houser v. Snap-On Tools Corp.*, 202 F.Supp. 181 (D.Md.1962); *Shedd–Bartush Foods of Illinois v. Commodity Credit Corp.*, 135 F.Supp. 78, 90, *aff'd*, 231 F.2d 555 (7th Cir.1956).

The Court finds plaintiff's request unripe, at best, and ill-supported, at worst. Plaintiff urges the Court to "consider all the circumstances of why the party is away from the trial and determine in the light of these factors whether to allow use of the deposition." Pl. Mem. at 3. Plaintiff fails, however, to provide the Court with any facts whatsoever. Plaintiff neither specifies which depositions it opposes nor discusses the availability of particular deponents for live testimony. The Court must therefore deny this request.

## V. PLAINTIFF'S REQUEST TO INCLUDE THE COST OF IN VITRO FERTILIZATION AND HER RESULTING PAIN AND SUFFERING AS ITEMS OF DAMAGES

Plaintiff requests that the expenses she incurred for in vitro fertilization procedures as well as her accompanying pain and suffering be included as items of damages. She alleges that the Cu–7 rendered her infertile and therefore unable to conceive a child in a natural manner. Because she and her husband wish to have a child, plaintiff has had to undergo numerous in vitro fertilization procedures. Plaintiff asserts that the procedures were necessitated

by defendant's conduct, and that the pain and suffering she has experienced as a result of these procedures is also directly traceable to defendant's conduct. Therefore, she argues, both the expenses and the pain and suffering are recoverable.

In a tort action, the general rule is that the wrongdoer is liable for any injury that is the natural and probable consequence of his misconduct and that is reasonably foreseeable. *See Walser v. Vinge*, 275 Minn. 230, 146 N.W.2d 537, 540 (1966); *Tarnowski v. Resop*, 236 Minn. 33, 51 N.W.2d 801, 804 (1952). The particular form or character of the injury need not be foreseen or anticipated. *See* Corpus Juris Secundum, Damages, § 25 at 674 & n. 72 (1966). A plaintiff's recovery may include compensation for impairment of physical functions or other disability, reasonable expenses for medical attention, and compensation for his pain and suffering. *See Hallada v. Great Northern Railway*, 244 Minn. 81, 69 N.W.2d 673, *cert. denied*, 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 773 (1955); *Dawydowycz v. Quady*, 300 Minn. 436, 220 N.W.2d 478, 481 (1974); 25 Corpus Juris Secundum, Damages, § 47(2) at 761–65.

While neither party has cited any cases directly on point, plaintiff cites several cases that are analogous. In each of the three cited cases the plaintiff recovered damages for medical procedures necessitated by the defendants' tortious conduct. *See, e.g., Nolan v. Merecki*, 88 A.D.2d 1021, 451 N.Y.S.2d 914 (3d Dept.1982) (expenses for additional medical care following failed sterilization procedure were recoverable); *Miller v. Duhart*, 637 S.W.2d 183 (Mo.App.1982) (damages stemming from failed tubal ligation could include cost of second, corrective sterilization procedure); *Beardsley v. Wierdsma*, 650 P.2d 288 (Wyo.1982) (in consolidated action, plaintiffs who had had unsuccessful tubal ligations could recover cost of abortions as well as damages for pain and suffering). The case at bar is similar: here, plaintiff alleges that she was rendered infertile by defendant's product, an injury that necessitated corrective procedures. That plaintiff was allegedly injured by a defective prod-

uct, rather than by a doctor's malpractice, does not adequately distinguish these cases. The determinative similarity between them and the case at bar is that plaintiff suffered an injury that she attempted to correct through further medical procedures.

Without attempting to distinguish these cases, defendant urges that plaintiff cannot recover the cost of the fertilization procedures because the procedures were "elective." Defendant offers only one case in support of this proposition, and in fact misreads that case. In *Laino v. James Way Corp.*, 92 A.D.2d 652, 460 N.Y.S.2d 175, 176 (3d Dept.1983), the appellate court affirmed plaintiff's recovery for the cost of diagnostic treatment, even though the plaintiff was found to have suffered no injury. Defendant suggests that this case holds that "[m]edical treatment, especially elective medical treatment, does not itself constitute actionable damages." Opp. Mem. at 17. If anything, however, the case supports the opposite contention: that the cost of "elective" or diagnostic medical treatment is recoverable.

In this case, the jury may find that defendant's product was the direct cause of plaintiff's infertility, and may also find that the infertility was foreseeable. Should it so find, the jury may consider the costs of Mrs. Hoppe's in vitro fertilization procedures in determining damages.

 Next, plaintiff argues that she should recover for her pain and suffering. As a general rule, a plaintiff in a personal injury action is entitled to compensation for the pain and suffering proximately and directly resulting form the wrongful act alleged. *See Hallada v. Great Northern Railway*, 244 Minn. 81, 69 N.W.2d 673, 685, *cert. denied*, 350 U.S. 874, 76 S.Ct. 119, 100 L.Ed. 773 (1955); *Dawydowycz v. Quady*, 300 Minn. 436, 220 N.W.2d 478, 481 (1974). Under Minnesota law, pain and suffering includes physical suffering as well as embarrassment, humiliation and frustration. *See Ahlstrom v. Minneapolis, St. Paul & Sault Ste. Marie Railroad Co.*, 244 Minn. 1, 68 N.W.2d 873, 890 (1955).

 Defendant argues that because the in vitro procedures were elective, plaintiff should not be able to recover for any pain and suffering occasioned by her infertility. In support, defendant cites *Bubash v. Philadelphia Elec. Co.*, 717 F.Supp. 297 (E.D.Pa.1989). The plaintiff in that case was denied damages for emotional distress because she had not made out a prima facie case of emotional distress under Pennsylvania law. This case is inapposite for two reasons: first, infliction of emotional distress is a cause of action, not a measure of damages, and Mrs. Hoppe does not allege either negligent or intentional infliction of emotional distress. Second, Pennsylvania law does not apply to this case.

Should plaintiff prove that her infertility resulted from the defendant's product, any pain and suffering that she experienced due to her subsequent in vitro therapy is a proper item of damages and proof of it may be submitted to the jury. *See, e.g., Caro v. Skyline Terrace Cooperative, Inc.*, 132 A.D.2d 512, 517 N.Y.S.2d 531 (2d Dept. 1987) (jury could consider evidence of pain and suffering plaintiff would experience during surgery necessitated by plaintiff's injury).

Therefore, both the expense incurred and pain and suffering experienced because of plaintiff's in vitro fertilization treatment are proper items of damages and may be submitted to the jury if the defendant's liability is established.

## VI. PLAINTIFF'S REQUEST TO STRIKE DEFENDANT'S FIRST, FIFTH, SIXTH AND NINTH AFFIRMATIVE DEFENSES

 Plaintiff requests that defendant's first, fifth, sixth and ninth affirmative defenses be stricken pursuant to Federal Rule of Civil Procedure 12(f). That rule provides that

> [u]pon motion made by a party before responding to a pleading ... or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense....

Because a court may strike an insufficient defense on its own initiative at any time, it

may also consider untimely motions to strike and grant them if doing so seems proper. *See Holzsager v. Valley Hospital,* 482 F.Supp. 629, 631 n. 3 (S.D.N.Y.1979); *Uniroyal, Inc. v. Heller,* 65 F.R.D. 83, 86 (S.D.N.Y.1974); 5 C. Wright & A. Miller, Federal Practice and Procedure § 1380 (1969). Thus, defendant's contention that plaintiff's motion to strike is untimely is not persuasive.

█ It is proper to grant motions to strike where "there are no questions of fact, [where] any questions of law are clear and not in dispute, and [where] under no set of circumstances could the defenses succeed." *Systems Corp. v. American Telephone & Telegraph Co.,* 60 F.R.D. 692, 694 (S.D.N.Y.1973) (quoting *Carter–Wallace, Inc. v. Riverton Laboratories, Inc.,* 47 F.R.D. 366, 368 (S.D.N.Y.1969)); *see Index Fund Inc. v. Hagopian,* 107 F.R.D. 95, 100 (S.D.N.Y.1985).

### A. First Affirmative Defense

█ Defendant's first affirmative defense asserts:

The FDA has approved the Cu–7 as a prescription drug IUD. Defendant G.D. Searle & Co. has met all requirements of the FDA. The Cu–7 may be obtained by prescription only from duly licensed medical personnel. The Federal government has preempted the field of law applicable to prescription drug products and their labeling. Therefore, the complaint fails to state a claim upon which relief may be granted.

Plaintiff contends that this defense is insufficient as a matter of law. The Court agrees. As a general proposition, FDA regulations do not preempt state tort law, and thus do not preclude tort suits against drug manufacturers, even where the manufacturer's warnings and labels complied with FDA regulations. *See, e.g., Abbot v. American Cyanamid Co.,* 844 F.2d 1108, 1111–14 (4th Cir.), *cert. denied,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988); *Stephens v. G.D. Searle & Co.,* 602 F.Supp. 379, 382 (E.D.Mich.1985); *Feldman v. Lederle Laboratories,* 97 N.J. 429, 479 A.2d 374 (N.J.1984). More specifically, other reported Cu–7 cases have ruled that FDA regulations do not preempt plaintiffs' state-law tort claims. *See, e.g., Hill v. Searle Laboratories,* 884 F.2d 1064, 1068 (8th Cir. 1989); *Callan v. G.D. Searle & Co.,* 709 F.Supp. 662 (D.C.Md.1989); *Allen v. G.D. Searle & Co.,* 708 F.Supp. 1142, 1150–52 (D.Or.1989); *Kociemba v. G.D. Searle & Co.,* 680 F.Supp. 1293, 1298–1300 (D.Minn. 1988); *Spychala v. G.D. Searle & Co.,* 705 F.Supp. 1024, 1027–31 (D.N.J.1988).

Defendant fails to cite even one case holding that the preemption defense is a valid one. Therefore, given the weight of authority, this Court finds as a matter of law that defendant's first affirmative defense of preemption is insufficient and therefore orders that it be stricken from the pleadings.

### B. Fifth, Sixth and Ninth Affirmative Defenses

█ Plaintiff next argues that defendant's fifth, sixth and ninth affirmative defenses should be stricken because they were rendered "moot and immaterial" by prior decisions of this Court. The fifth affirmative defense asserts that "[p]laintiff's claims are barred for failure to give timely notice as required by the applicable statutes, and are barred by the applicable statutes of limitations." Plaintiff asserts that because this Court ruled upon the statute of limitations argument in its October 24, 1989 summary judgment decision, that portion of the fifth affirmative defense is moot. In response, defendant argues that the Court did not explicitly rule that plaintiff's action was timely. Defendant's argument is specious. Had the Court found that the action was untimely, defendant's motion for summary judgment would have been granted. The motion was denied, however, because the action was found to have been timely. Therefore, the statute of limitations portion of the fifth affirmative defense is insufficient and is ordered stricken from the pleadings.

█ As for the "failure to give timely notice" portion of the defense, plaintiff has made no specific argument as to why it is legally insufficient and therefore capable

of being stricken. Rather, plaintiff conclusorily states that the defense is "moot." This argument is insufficient under Federal Rule of Civil Procedure 7(b)(1), which provides that motions "shall state with particularity the grounds therefor." Therefore, that portion of the fifth affirmative defense alleging untimely notice shall not be stricken. *See South v. U.S.*, 40 F.R.D. 374 (D.Miss.1966) (motion to strike denied in part for failure to comply with Rule 7(b)(1)); *Sachs v. Ohio National Life Insurance Co.*, 2 F.R.D. 348 (N.D.Ill.1942) (same). For the same reason, plaintiff's request to strike the sixth affirmative defense (laches) is denied.

■■■ Finally, defendant's ninth affirmative defense asserts that "[t]he transferor Court did not have personal jurisdiction of the Defendant in this action." In July 1987, defendant filed moving papers in the Minnesota District Court requesting dismissal for lack of personal jurisdiction, *see* Fed.R.Civ.P. 12(b)(1), and alternatively for transfer to New York. On March 25, 1988, the Minnesota court denied defendant's motion to dismiss, concluding that it had personal jurisdiction over the defendant, and transferred the case to this Court. *See* 28 U.S.C. § 1404(a). This issue having been decided, the ninth affirmative defense is insufficient as a matter of law, and therefore the plaintiff's request that it be stricken is granted.

For these reasons, the first and ninth affirmative defenses are ordered stricken, as is the statute-of-limitations portion of the fifth affirmative defense. Both the sixth affirmative defense and the "untimely notice" portion of the fifth affirmative defense shall remain on the record, and are not stricken.

## VII. DEFENDANT'S MOTION TO DISMISS COUNTS SIX AND SEVEN OF PLAINTIFF'S COMPLAINT

■■■ Defendant moves for dismissal of the sixth and seventh counts of plaintiff's complaint. Count six states a claim under the Minnesota Consumer Protection Act, Minn.Stat. §§ 325F.69, 325F.67, and count seven claims punitive damages under Minnesota Statute § 549.20. Defendant urges that these claims be dismissed on the ground that New York law does not recognize either claim.

In an October 1989 decision denying defendant's motion for summary judgment, this Court ruled that the law of Minnesota would apply to this action. *See* Memorandum Opinion and Order, *Hoppe v. G.D. Searle & Co.*, 88 Civ. 2558 (JFK), slip op. at 5, 7 (October 24, 1989). That decision was based on the clear mandate of *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), which provides that when a case is transferred pursuant to 28 U.S.C. § 1404(a), the transferee court should apply the law of the transferor court. While the Court sees little utility in revisiting that decision, it will briefly suggest why Minnesota's choice-of-law rules recommend the application of Minnesota substantive law.

In *Milkovich v. Saari*, 295 Minn. 155, 203 N.W.2d 408 (Minn.1973), the Minnesota Supreme Court set forth the relevant factors in choice-of-law analysis: predictability of results, maintenance of interstate order, simplification of the judicial task, advancement of the forum's governmental interest, and the better rule of law. In its own analysis, the *Milkovich* court stated that the first factor, predictability of results, had little significance in a tort case. *See id.* at 203 N.W.2d at 416–17. That court also deemed simplification of the judicial task a factor of little concern, *see id.*

As for advancement of the forum's governmental interest, it seems that Minnesota has a valid interest in the facts of this case. First, the defendant does not deny that it has transacted and continues to transact business in Minnesota, has committed acts within that state, and has "minimum contacts" with Minnesota. *See* Order, *Hoppe v. G.D. Searle & Co.*, 683 F.Supp. 1271, 1271–72 (Renner, J.) (D.Minn.1988). Those contacts involve the product at issue in this lawsuit. Searle not only promoted and sold the Cu–7 in Minnesota, Searle also conducted clinical testing in that state, testing that plaintiff contends was tortiously inadequate. This testing, which was conducted

"at Searle's behest and for Searle's benefit," relied on the participation of Minnesota physicians and Minnesota subjects. *See id.* at 1275. At least two of these physicians apparently expressed misgivings about the Cu–7, including one doctor who informed Searle of a possible design defect in the Cu–7.[1] Plaintiff's claim turns at least in part on whether Searle's testing of the Cu–7 was adequate and conformed to the appropriate standards of conduct. Therefore, it appears that the application of Minnesota law is warranted under the facts of the case, as the plaintiff's claims can be said to " 'lie[ ] in the wake of the commercial activities' " defendant conducted in Minnesota. *See id.* at 1275 (citation omitted).

Therefore, defendant's request for an order dismissing counts six and seven of the complaint on the ground that they are not cognizable under New York law is denied.

## VIII. PLAINTIFF'S REQUEST THAT POST–INJURY EVIDENCE BE ADMITTED PURSUANT TO THE MINNESOTA PUNITIVE DAMAGES STATUTE

■ Plaintiff next requests that post-injury conduct by Searle be admitted under the Minnesota Punitive Damages Statute, Minn.Stat. § 549.20 (1990 Pocket Part). This statute provides that

[p]unitive damages shall be allowed in civil actions only upon clear and convincing evidence that the acts of the defendant show a deliberate disregard to the rights of safety of others.... Any award of punitive damages shall be measured by those factors which justly bear upon the purpose of punitive damages, including the seriousness of hazard to the public arising from the defendant's misconduct, the profitability of the misconduct to the defendant, the duration of the misconduct and any concealment of it, the degree of the defendant's awareness of the hazard and of its excessive-

ness, the attitude and conduct of the defendant upon the discovery of the misconduct, the number and level of employees involved in causing or concealing the misconduct, the financial condition of the defendant, and the total effect of other punishment likely to be imposed upon the defendant as a result of the misconduct, including compensatory and punitive damage awards to the plaintiff and other similarly situated persons, and the severity of any criminal penalty to which the defendant may be subject.

As plaintiff observes, several decisions of the Minnesota Supreme Court suggest that post-injury evidence is admissible. *See, e.g., Hodder v. The Goodyear Tire & Rubber Co.*, 426 N.W.2d 826 (Minn.1988), *cert. denied*, 492 U.S. 926, 109 S.Ct. 3265, 106 L.Ed.2d 610 (1989) (admitting evidence of defendant's refusal to implement government regulations two years after plaintiff's injury); *Advance Training Systems v. Caswell Equipment Co.*, 352 N.W.2d 1 (Minn.1984) (admitting evidence of defendant's conduct prior to that giving rise to plaintiff's cause of action under subdivision 3 of Minn.Stat. § 549.20, which provides that trier of fact must consider duration of defendant's conduct in assessing punitive damages). Even more persuasive, evidence of post-injury conduct has been admitted against Searle in a similar lawsuit. *See Kociemba v. G.D. Searle & Co.*, 707 F.Supp. 1517, 1536 (D.Minn.1988).

Defendant argues that post-injury conduct is inadmissible under New York law. Because New York law does not apply in this action, that argument is irrelevant. Defendant next requests that the Court "bar the introduction of evidence intended solely to inflame the jury." Opp.Mem. at 20–21. Should plaintiff introduce any evidence whose prejudicial effect substantially outweighs its probativity, defendant will presumably make the appropriate Rule 403

---

**1.** A Dr. Freeman apparently informed Searle that the IUD seemed to have a "memory," a tendency to assume its shape as originally packaged. Such a characteristic, which would pose a risk of infection by transporting bacteria from the vagina into the uterus, might constitute a design defect. *See* Order, *Hoppe v. G.D. Searle & Co.*, 683 F.Supp. 1271, 1275 (Renner, J.) (D.Minn.1988).

objection and the Court will rule accordingly.

Plaintiff's request to introduce post-injury evidence is granted.

## IX. DEFENDANT'S MOTIONS IN LIMINE

Defendant moves to exclude evidence of and references to 1) drug experience reports, 2) other Cu–7 cases, 3) the task-force report, and 4) Searle's discontinuance of the Cu–7. Because plaintiff does not oppose defendant's motions to exclude evidence of the task-force report or of the discontinuance of the Cu–7, the Court grants defendant's motions to exclude that evidence. Next, the parties have advised the Court that they have reached an agreement on the issue of other Cu–7 cases; therefore, the Court need not rule on that motion.

■ Defendant's remaining motion seeks exclusion of "drug experience reports" ("DERs") that it is required to submit to the Food and Drug Administration. *See* 21 C.F.R. § 310.305, 314.80 (1989). These reports, which are generally prepared by physicians and nurses not associated with Searle, contain anecdotal information about patients' adverse experiences with the Cu–7. Defendant argues that these reports should be excluded as unreliable hearsay: Searle contends that it is required to submit the reports without regard to whether they are reliable, complete or current. Further,

> [t]hese reports may relate conclusions about medical causation or other issues based on subjective interpretation of second hand, incomplete data by individuals with little or no medical knowledge. Though Searle cannot conduct an independent investigation to substantiate the information provided in each such report, Searle must submit each report it receives to the FDA.

Def.Mem. at 2.

Plaintiff responds that the reports do not constitute inadmissible hearsay because plaintiff will not offer them to prove the truth of the matters asserted. *See* Pl.Opp. Mem. at 1. Rather, plaintiff will offer them to prove Searle's knowledge and awareness of adverse experiences with the Cu–7. Other courts have admitted this sort of drug experience evidence in product liability cases. *See Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613 (8th Cir. 1983) (upholding trial court's admission of documents and testimony detailing complaints about defendant's tampons in toxic shock syndrome case); *Worsham v. A.H. Robins Co.*, 734 F.2d 676 (11th Cir.1984) (affirming trial court's admission of reports from doctors and company field representatives describing adverse reactions to Dalkon Shield).

DER reports dated before March 28, 1978, the approximate date of the insertion of plaintiff's Cu–7, are properly admitted into evidence on the issue of notice under Federal Rule of Evidence 401. *See Kehm*, 724 F.2d at 625–26 (citing *Ramos v. Liberty Mutual Ins. Co.*, 615 F.2d 334, 338–39 (5th Cir.1980)), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 921, 66 L.Ed.2d 840 (1981). Therefore, defendant's motion to exclude the reports is denied.

SO ORDERED.